UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CRIMINAL MINUTES—GENERAL

JS-3

| Case No. | **CR 17-262 JGB** | Date | April 17, 2018 |
|---|---|---|---|
| Title | *United States v. Rosebrock* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    Order Affirming Judgment of Dismissal (IN CHAMBERS)

    Before the Court is an appeal of the United States of America ("Appellant") from a judgment of the Honorable Steve Kim, United States Magistrate Judge, dismissing two charges under 38 C.F.R. § 1.218(a)(10) against Robert L. Rosebrock ("Appellee"). After considering the papers filed, the Court AFFIRMS the Magistrate Judge's dismissal of the charges.

### I. BACKGROUND

    On May 30, 2016, on the Los Angeles campus of the United States Department of Veteran Affairs ("VA"), VA Police Officer Ralph Garcia observed Appellee taking photographs of flags in an area of the VA property known as the Great Lawn. (Dkt. No. 1-1 at 2.) After identifying himself as VA police and advising Appellee that "the taking of photographs on VA property without authorization for media use is not authorized," Officer Garcia asked Appellee what purpose Appellee had in taking photographs. (Id.) Appellee responded that he intended to "[p]ut them on a website and plaster you guys all over the net with news stories on you." (Id.) After twice warning Appellee that continued unauthorized photography would result in a citation, Officer Garcia detained Appellee "for unauthorized photography," as well as for placing and displaying the United States flag on a fence. (Id.) Appellee persisted in taking pictures, and Officer Garcia "advised [Appellee] Rosebrock he would now be receiving a citation for unauthorized photography." (Id.) Officer Garcia issued two citations: (1) for a violation of 38 C.F.R. § 1.218(a)(10), "taking photographs without permission," Central Violations Bureau

("CVB") No. 4920201, and (2) for a violation of 38 C.F.R. § 1.218(a)(9), "posting materials on property without authorization," CVB No. 4920202. (Id. at 1–2 (capitalization removed).)[1]

In another incident on June 12, 2016, Sergeant Michael Perez observed Appellee recording video at "Veterans Parkway," on or near the VA campus in Los Angeles, "without permission or authority." (Dkt. No. 1-2 at 1.) Sergeant Perez issued Appellee a citation for a violation of 38 C.F.R. § 1.218(a)(10), "taking video recording/photographs without permission," CVB No. 6593951. (Id.)

Before the Magistrate Court, Appellee moved to dismiss the 38 C.F.R. § 1.218(a)(10) charges (CVB Nos. 4920201 and 6593951). (See "Mot. Hrg. Tr.," Dkt. No. 7-4 at 5:12–13.) On March 7, 2017 and April 11, 2017, Judge Kim held oral argument on the motion. (Id.; "Pretrial Hrg. Tr.," Dkt. No. 1-6 at 5:24–6:1.) For the purpose of the motion, Judge Kim assumed that: (1) Appellee had been taking photographs and video for news purposes (see Mot. Hrg. Tr. at 64:22–23; Pretrial Hrg. Tr. at 28:3–6, 104:14–105:4); (2) Appellee had been taking photographs and video on the Great Lawn of the VA campus and not at an entrance to the property (see Pretrial Hrg. Tr. at 35:20–36:18, 104:14–17); and (3) Appellee's photography and video recording were "either speech or the exercise of the right to press subject to First-Amendment protection" (id. at 105:1–4).

At the conclusion of the April 11, 2017 hearing, Judge Kim issued a tentative ruling on the record dismissing the 38 C.F.R. § 1.218(a)(10) charges. (See generally id. at 103:19–112:13.) Judge Kim determined that the photography regulation, 38 C.F.R. § 1.218(a)(10), violated the First Amendment as applied to Appellee and his conduct on the Great Lawn. (See id. at 104:18–23, 112:10–11.) Judge Kim declined to decide whether the Great Lawn was a public or a nonpublic forum. (See id. at 105:5–106:7.) Instead, he determined that the photography regulation would fail both intermediate scrutiny, which would apply if the Great Lawn were a public forum, and rational basis review, which would apply if it were a nonpublic forum. (See id. at 105:12–17, 106:4–7.) Judge Kim reasoned that "even under the deferential rational basis review[,] it does not make rational sense to prohibit photographs and videos on the Great Lawn for news purposes but then not to prohibit it for any non-news[,] non-commercial purposes." (Id. at 112:6–9.)

On April 18, 2017, Judge Kim adopted the tentative ruling and dismissed the 38 C.F.R. § 1.218(a)(10) charges. (Dkt. No. 7-3 at 7:8–14.) The Court entered a judgment dismissing the charges on May 1, 2017. (Dkt. No. 1-5.)

---

[1] Appellee was acquitted of the 38 C.F.R. § 1.218(a)(9) charge at trial. (Dkt. No. 1-4.) The dismissal of the 38 C.F.R. § 1.218(a)(10) charges and the acquittal of the 38 C.F.R. § 1.218(a)(9) charge appear in the same judgment. (Dkt. No. 1-5.)

Appellant appealed the judgment of dismissal pursuant to Federal Rule of Criminal Procedure 58(g)(2).[2] On June 30, 2017, Appellant filed its opening brief. ("Opening Br.," Dkt. No. 7.) Appellee filed an answering brief on July 28, 2017. ("Answering Br.," Dkt. No. 8.) Appellant replied on August 18, 2017. ("Reply Br.," Dkt. No. 9.)

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over this appeal under Federal Rule of Criminal Procedure 58(g)(2)(A). For petty offenses and other misdemeanors, the scope of an appeal from a magistrate judge's order or judgment "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). A district court "reviews de novo a magistrate judge's legal conclusions and reviews any underlying factual findings for clear error." United States v. McDermott, 589 F. App'x 394, 395 (9th Cir. 2015) (citing Quinn v. Robinson, 783 F.2d 776, 791 (9th Cir. 1986), and Fed. R. Crim. P. 58(g)(2)(D)).

"[W]e review the district court's ruling on a motion to dismiss an indictment de novo." United States v. Daychild, 357 F.3d 1082, 1089 n.5 (9th Cir. 2004). Constitutional challenges to statutes and regulations are reviewed de novo. See United States v. Chovan, 735 F.3d 1127, 1131 (9th Cir. 2013). "Questions of statutory interpretation are also reviewed de novo." United States v. Latu, 479 F.3d 1153, 1155 (9th Cir. 2007).

## III. DISCUSSION

### A. Reaching the Regulatory Interpretation Issue

In his Answering Brief, Appellee argues that 38 C.F.R. § 1.218(a)(10) does not prohibit photography for news purposes in undesignated areas, so the dismissal of charges under § 1.218(a)(10) may be affirmed on this alternative ground. (Answering Br. at 7–8.) Before addressing the substance of the argument, the Court considers whether the regulatory interpretation issue is properly before it.

An appellate court "may affirm on any basis supported by the record." Hell's Angels Motorcycle Corp. v. McKinley, 360 F.3d 930, 933 (9th Cir. 2004). "Generally, an appellate court will not hear an issue raised for the first time on appeal." Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 543 (9th Cir. 2016). There is no "bright line rule" to determine whether an issue was properly raised below; "[t]he standard 'is that the argument must have been raised sufficiently for the trial court to rule on it.'" Id. (quoting Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 515 (9th Cir. 1992)).

---

[2] Though the judgment reflects the acquittal of the 38 C.F.R. § 1.218(a)(9) charge in addition to the dismissal of the § 1.218(a)(10) charges, (Dkt. No. 1-5), Appellant appeals the judgment only to the extent the § 1.218(a)(10) photography charges were dismissed. (See Dkt. No. 7 at 1 n.1, 10.)

"[A] federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available. This rule against unnecessary constitutional adjudication applies even when neither the trial court nor the parties have considered the nonconstitutional basis for decision." City of L.A. v. Cty. of Kern, 581 F.3d 841, 846 (quoting Correa v. Clayton, 563 F.2d 396, 400 (9th Cir. 1977)); accord Ariz. Dream Act Coalition v. Brewer, 855 F.3d 957, 970–71 (9th Cir. 2017). Courts tend to decide issues of statutory interpretation before turning to constitutional issues. Douglas v. Seacoast Prods., Inc., 431 U.S. 265, 272 (1977) (noting the "practice of deciding statutory claims first to avoid unnecessary constitutional adjudications").

Appellee argued before Judge Kim that the regulation does not impose a criminal penalty for news photography, although Judge Kim disregarded the argument. (See Mot. Hrg. Tr. 61:16–22.) The regulatory interpretation issue is properly before this Court because (1) Appellee brought the issue before Judge Kim in the motion to dismiss the § 1.218(a)(10) charges and (2) the doctrine of constitutional avoidance does not require the issue to have been raised or adjudicated in the trial court. See City of L.A., 581 F.3d at 846.

**B. Statutory and Regulatory Context of 38 C.F.R. § 1.218**

38 U.S.C. § 901 grants the Secretary of Veterans Affairs the authority to "prescribe regulations to provide for the maintenance of law and order and the protection of persons and property on Department property." 38 U.S.C. § 901(a)(1). The statute permits the Secretary to promulgate rules for conduct on VA property and penalties for violations of those rules. Id. § 901(b). Penalties for violations of the rules of conduct are limited to fines, imprisonment for "not more than six months, or both." Id. § 901(c).

Pursuant to that statutory authority, 38 C.F.R. § 1.218(a) provides the rules and regulations applicable "to all persons entering in or on" VA property. The subsection of the rules under which Appellee was charged, 38 C.F.R. § 1.218(a)(10), reads in full:

> Photographs for news, advertising, or commercial purposes. Photographs for advertising or commercial purposes may be taken only with the written consent of the head of the facility or designee. Photographs for news purposes may be taken at entrances, lobbies, foyers, or in other places designated by the head of the facility or designee.

Subsection (b) of the regulation provides, "Conduct in violation of the rules and regulations set forth in paragraph (a) of this section subjects an offender to arrest and removal from the premises." Id. § 1.218(b). A person "found guilty of violating these rules and regulations . . . is subject to a fine as stated in the schedule set forth" in subsection (b), and violations included in the subsection (b) schedule "may also subject an offender to a term of imprisonment of not more than six months." Id. The schedule prescribes a $50 fine for "[u]nauthorized photography on premises." Id. § 1.218(b)(23).

The stated purpose of the rules and regulations is "to provide for the maintenance of law and order and the protection of persons and property on lands and in buildings . . . under the jurisdiction of the [VA]." 38 Fed. Reg. 24,364, 24,364 (Sept. 7, 1973). There are no references or explanations specific to the photography rules in publications of the Federal Register relating to the implementation and amendment of § 1.218. See generally 90 Fed. Reg. 49,157 (Aug. 17, 2015); 57 Fed. Reg. 31,006 (July 13, 1992); 54 Fed. Reg. 34,977 (Aug. 23, 1989); 50 Fed. Reg. 29,226 (July 18, 1985); 38 Fed. Reg. 24,364 (Sept. 7, 1973). The text of the photography rule and associated fine has not changed substantively since the regulation was adopted in 1973. Compare 38 C.F.R. § 1.218(a)(10), (b)(23), with 38 Fed. Reg. 24,364, 24,365–66 (Sept. 7, 1973).

### C. Courts' Acknowledgment of 38 C.F.R. § 1.218 Charges

Neither party cites any case interpreting the photography provisions of the regulation. After conducting a thorough and independent review of decisions construing 38 C.F.R. § 1.218, the Court is unaware of any court decision citing, interpreting, or discussing a charge under 38 C.F.R. § 1.218(a)(10) or § 1.218(b)(23). A nonexhaustive review of courts' construction of other charges under § 1.218 follows.

Federal courts have not consistently differentiated charges brought under subsection (a), which outlines the rules and regulations governing conduct on VA property, and those brought under subsection (b), which sets out a schedule of fineable offenses for violating those rules and regulations. Compare United States v. Moran, 403 F. App'x 222, 223 (9th Cir. 2010) (discussing offenses under subsection (b) without discussing the proscriptions of subsection (a)), with Rosebrock v. Mathis, 745 F.3d 963, 966–67 (9th Cir. 2014) (discussing a subsection (a)(9) offense without discussing the corresponding subsection (b)(22) fine), and United States v. Agront, 773 F.3d 192, 196 (9th Cir. 2014) (reading a subsection (b) fine "in conjunction with" the corresponding prohibition in subsection (a), "the substantive provision"). This Court adopts the Agront approach and reads subsection (a)(10), establishing photography rules and regulations, "in conjunction with" subsection (b)(23), providing a fine for unauthorized photography. See 773 F.3d at 196.

Courts in the Ninth Circuit have upheld or recognized charges brought under subsection (a)(3), for the improper disposal of rubbish, carrying a fine under subsection (b)(1), United States v. Parrel, 572 F. App'x 538, 540 (9th Cir. 2014); subsection (a)(5), for disorderly conduct creating a loud, boisterous, and unusual noise, carrying a fine under subsection (b)(11), Agront, 773 F.3d at 200; subsection (a)(8), for solicitation of alms and contributions, carrying a fine under subsection (b)(19), United States v. Thomas, No. 13-3370M-001-PHX-LOA, 2013 U.S. Dist. LEXIS 154253, 2013 WL 5783408, at *4 (D. Ariz. Oct. 28, 2013); subsection (b)(21), for distribution of pamphlets, as proscribed by subsection (a)(9), Moran, 403 F. App'x at 223; subsection (a)(9), for posting materials on VA property, carrying a fine under subsection (b)(22), Rosebrock, 745 F.3d at 966; subsection (b)(32), for driving in the wrong direction on a posted one-way street, as proscribed by subsection (a)(12), United States v. Maes, 546 F.3d 1066, 1067 (9th Cir. 2008); subsection (b)(33), for unsafe driving, as proscribed by subsection (a)(12), United States v. Alexander, 669 F. App'x 434, 435 (9th Cir. 2016); subsection (b)(39), for

possession of an excessively long knife, as proscribed by subsection (a)(13), United States v. Benton, 407 F. App'x 218, 218 (9th Cir. 2011); Moran, 403 F. App'x at 223; subsection (b)(40), for possession of an incapacitating liquid, as proscribed by subsection (a)(13), Moran, 403 F. App'x at 223; and subsection (a)(14), for unauthorized demonstrations or services, carrying a fine under subsection (b)(9), Preminger v. Peake, 552 F.3d 757, 764 (9th Cir. 2008).

Other federal courts have discussed offenses under subsection (b)(8), for trespass, as proscribed by subsection (a)(2), Moore v. Samuel S. Stratten Veterans Admin. Hosp., No. 1:16-CV-475 (LEK/CFH), 2016 U.S. Dist. LEXIS 73412, 2016 WL 3647180, at *5 (N.D.N.Y. June 3, 2016); subsection (b)(4), for willful removal of government property without authorization, as proscribed by subsection (a)(3), United States v. Ardines, 293 F.R.D. 117, 122 (E.D.N.Y. 2013); subsection (b)(6), for failing to comply with signs of a directive and restrictive nature posted for safety purposes, as proscribed by subsection (a)(4), Williams v. Young, 769 F. Supp. 2d 594, 598 (S.D.N.Y. 2011); subsection (a)(7), for operating a vehicle under the influence of alcohol on VA property, carrying a fine under subsection (b)(15), United States v. Reggie, 572 F. App'x 121, 123 (3d Cir. 2014); subsection (a)(7), for bringing alcohol onto VA property and consuming it, carrying a fine under subsections (b)(17)–(18), Randle v. Rakiecki, No. 08-CV-579A, 2009 U.S. Dist. LEXIS 113621, 2009 WL 4571822, at *1–2 (W.D.N.Y. Dec. 7, 2009); and subsection (b)(24), for failure to comply with traffic directions of VA police, as proscribed by subsection (a)(12), Williams, 769 F. Supp. 2d at 598.

The recognized charges of violations of 38 C.F.R. § 1.218 share a significant commonality: each offense derives from clearly proscriptive or commanding language in the subsection (a) rules and regulations. See 38 C.F.R. § 1.218(a)(2) ("No person, without authorization, shall enter upon or remain on such property while the property is closed. Failure to leave such premises by unauthorized persons shall constitute an offense under this paragraph." (emphasis added)); id. § 1.218(a)(3) ("The improper disposal of rubbish on property; . . . or the willful destruction, damage, or removal of Government property or any part thereof, without authorization, is prohibited." (emphasis added)); id. § 1.218(a)(4) ("Persons, in and on property, shall comply with such signs of a prohibitory or directory nature, and during emergencies, with the direction of police authorities and other authorized officials." (emphasis added)); id. § 1.218(a)(5) ("Conduct on property which creates loud or unusual noise . . . is prohibited." (emphasis added)); id. § 1.218(a)(7) ("Operating a motor vehicle on property by a person under the influence of alcoholic beverages . . . is prohibited. . . . The use on property of any . . . drug . . . (unless prescribed by a physician) is prohibited. The introduction or possession of alcoholic beverages or any . . . drug . . . on property is prohibited . . . ." (emphasis added)); id. § 1.218(a)(8) ("Soliciting alms and contributions . . . is prohibited." (emphasis added)); id. § 1.218(a)(9) ("The distributing of materials such as pamphlets, handbills, and/or flyers, and the displaying of placards or posting of materials on bulletin boards or elsewhere on property is prohibited . . . ." (emphasis added)); id. § 1.218(a)(12) ("Drivers of all vehicles in or on property shall drive in a careful and safe manner at all times and shall comply with the signals and directions of police and all posted traffic signs." (emphasis added)); id. § 1.218(a)(13) ("No person while on property shall carry firearms, other dangerous or deadly weapons, or explosives . . . ." (emphasis added)); id. § 1.218(a)(14)(i) ("[A]ny service, ceremony, or

demonstration, except as authorized by the head of the facility or designee, is <u>prohibited</u>." (emphasis added)).

**D. Other Regulations of Photography on Federal Property**

In support of its appeal, Appellant argues that the "myriad federal regulations" similar to the VA news photography regulations show "that there is something uniquely disruptive about commercial, advertising, and news photography." (Opening Br. at 21.) A review of these regulations, however, reveals an inconsistent patchwork of rules for news photography on federal property.

The General Services Administration ("GSA") regulation of news photography is facially similar to the VA regulation. It states that "persons entering in or on Federal property may take photographs of . . . [b]uilding entrances, lobbies, foyers, corridors, or auditoriums for news purposes." 41 C.F.R. § 102-74.420(c). Nevertheless, the GSA regulation of photography as a whole is dissimilar to the VA regulation in that the GSA regulation limits photography for all purposes. Subsections (a) and (b) of the GSA regulation restrict photography taken for non-commercial and commercial purposes, respectively, without the consent of the occupying agency. 41 C.F.R. § 102-74.420(a)–(b). The universe of photographic purposes is restricted by these two subsections alone. No matter the photographic purpose, a photographer must seek permission from the occupying agency—except when taking photography authorized under the news photography subsection. Subsection (c), which permits news photography in certain locations, is best read as a qualification of subsections (a) and (b): permission need not be sought by persons who take photographs of "[b]uilding entrances, lobbies, foyers, corridors, or auditoriums for news purposes." <u>Id.</u> § 102-74.420(c). In contrast, the VA regulation does not purport to regulate non-news, non-commercial photography. <u>See</u> 38 C.F.R. § 1.218(a)(10). The VA regulation does not contain a blanket prohibition on unauthorized photography; for example, one need not get permission to take photographs on VA property for personal use. Though the text of the news photography subsection of the GSA regulation is similar to the VA news photography provision, the GSA regulation separately restricts unauthorized news photography.

It also remains unclear whether it is possible to violate subsection (c) of the GSA regulation. The Court is aware of only one case contemplating a charge under 41 C.F.R. § 102-74.420: <u>Askins v. U.S. Dep't of Homeland Sec.</u>, No. 12-CV-2600 W (BLM), 2015 WL 12434362 (S.D. Cal. Jan. 29, 2015). The court in <u>Askins</u> examined a specific subsection of the GSA photography regulation, 41 C.F.R. § 102-74.420(a), which states that persons on federal property may take photographs of "[s]pace occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned." The court held that a violation of § 102-74.420(a) constitutes a crime. <u>Askins</u>, 2015 WL 12434362, at *8, 11. But <u>Askins</u> did not decide whether it is possible to violate subsection (c) of the GSA regulation—the analog to the VA news photography regulation. <u>See generally id.</u> at *5–11.

The other regulations Appellant cites are dissimilar as well. The conduct regulation for the United States Postal Service provides that "photographs for news purposes may be taken in

| Page 7 of 13 | CRIMINAL MINUTES— GENERAL | Initials of Deputy Clerk <u>MG</u> |
|---|---|---|


entrances, lobbies, foyers, corridors, or auditoriums when used for public meetings." 39 C.F.R. § 232.1(i). Yet the regulation also presents restrictions on all "[o]ther photography," which "may be taken only with the permission of the local postmaster or installation head." Id. (emphasis added); but see United States v. Kokinda, 497 U.S. 720, 761 n.14 (Brennan, J., dissenting) (construing the photography regulation as creating a binary between photographs for news purposes and "photographs for other than news purposes" without discussing photography for news purposes outside of designated areas). Similarly, 7 C.F.R. § 501.9, a regulation governing photographs at a Department of Agriculture research center in Nebraska, states that "photographs for news purposes may be taken in entrances, lobbies, foyers or auditoriums when used for public meetings without prior permission." The same regulation, however, has a separate prohibition on news photography using restrictive language: "Photographs for news . . . purposes may be taken in space or areas occupied by a cooperator only with the consent of the cooperator concerned and the Director, Research Center." Id. (emphasis added).

Other regulations not cited by Appellants, including other Department of Agriculture regulations, apply less stringent restrictions to news photography compared to commercial and advertising photography. For example, "[p]hotographs for news purposes may be taken at the [United States National Arboretum] without prior permission," whereas advertising or commercial photography requires prior approval. 7 C.F.R. § 500.9. A similar scheme applies to photography at the Beltsville Agriculture Research Center, see 7 C.F.R. § 502.10 ("Photographs may be taken by visitors or for news purposes without prior permission."), and the Main Treasury Building and Treasury Annex Building, see 31 C.F.R. § 407.10 ("[P]hotographs for news purposes may be taken in areas on the property to which the public customarily has access without prior permission."). A Department of Health and Human Services regulation permits "photographs . . . for personal or news purposes" in certain areas, whereas the regulation restricts "[p]hotographs . . . for advertising or commercial purposes" taken without prior approval. 45 C.F.R. § 3.42(c). Whereas commercial filming requires a permit in areas administered by the National Park Service, the Bureau of Land Management, and the U.S. Fish and Wildlife Service, generally "[n]ews-gathering activities involving filming, videography, or still photography do not require a permit." 43 C.F.R. § 5.4; see also id. § 5.2.

Yet other regulations provide clear photography restrictions without carving out different rules for news photography. See, e.g., 4 C.F.R. § 25.11 ("Photographs may be taken in the [Government Accountability Office] Building only with the approval or authorization of the Comptroller General or his designee."); 7 C.F.R. § 503.10 (restricting photography for "news, advertising, commercial purposes, or personal use" at the Plum Island Animal Disease Center); 31 C.F.R. § 700.9 (restricting "[p]hotographs for news, advertising, or commercial purposes" without prior permission at the Federal Law Enforcement Training Center); 46 C.F.R. § 386.17 (restricting "[p]hotographs for news, advertising or commercial purposes" without written consent at the United States Merchant Marine Academy).

Finally, an oddity: regulations governing photography at Smithsonian buildings are titled "Photographs for news, advertising, or commercial purposes," but those regulations only restrict

"photographs for advertising or any other commercial purpose"—not photographs for news purposes. 36 C.F.R. § 504.11; 36 C.F.R. § 520.12.

In sum, there is no consistent scheme of regulating news photography on federal property. Regulations that contain provisions permitting news photography in "entrances, lobbies, foyers," and the like often contain a separate clause prohibiting unauthorized news photography outside those locations. See 7 C.F.R. § 501.9; 39 C.F.R. § 232.1(*i*); 41 C.F.R. § 102-74.420. Other regulations classifying news photography separate from photography for other purposes often contain permissive language for news photography and restrictive language for other photography. See 7 C.F.R. § 500.9; 7 C.F.R. § 502.10; 31 C.F.R. § 407.10; 43 C.F.R. § 5.4; 45 C.F.R. § 3.42(c). Still other regulations make no effective distinction between news and other photography. See 4 C.F.R. § 25.11; 7 C.F.R. § 503.10; 31 C.F.R. § 700.9; 46 C.F.R. § 386.17.

E. Construction of 38 C.F.R. § 1.218(a)(10)

As one sister district court acknowledged, 38 C.F.R. § 1.218 is "not a model of drafting clarity." Thomas, 2013 WL 5783408, at *4. The bifurcation of the regulation into subsection (a), providing rules and regulations, and subsection (b), providing fines for violations of the subsection (a) rules and regulations, aside from confusing prosecutors deciding whether to charge an offender under subsection (a) or (b), muddles whether certain conduct carries a criminal sanction. For example, the traffic regulation of (a)(12) is nonspecific in its proscription of "parking in unauthorized locations" and "[o]peration of a vehicle in a reckless or unsafe manner." 38 C.F.R. § 1.218(a)(12). The (b) side of the regulation, on the other hand, provides fines for specific violations not expressly prohibited by subsection (a)(12), from "[p]arking in spaces posted as reserved for physically disabled persons" to "[f]ailing to come to a complete stop at a STOP sign." Id. § 1.218(b)(25), (30); see generally id. § 1.218(b)(24)–(36). Whereas the level of generality of the traffic rules in subsection (a)(12) is broad, the fines imposed by subsections (b)(24)–(36) give more specificity to the broader rules.

Likewise, the difference in the level of generality between subsections (a)(10) and (b)(23) obfuscates the intended prohibition on photography. Subsection (a) discusses photography for commercial, advertising, and news purposes; it restricts any commercial and advertising photography taken without consent, and it authorizes news photography in certain locations on VA property. Id. § 1.218(a)(10). The fine corresponding with a violation of subsection (a)(10), however, does not make any distinction concerning the purpose or location of photography: subsection (b)(23) assigns a $50 fine for "[u]nauthorized photography on premises." Id. § 1.218(b)(23). As Appellant acknowledges, the prohibition on photography does not extend to all photography not expressly authorized; Appellant's reading of the rule would not penalize those who take unauthorized photographs on VA property for personal purposes. (See, e.g., Pretrial Hrg. Tr. at 46:24–25 (conceding "that the regulation would not prohibit purely recreational" photography).) Thus, subsection (b)(23) does not control the Court's interpretation of the breadth of the photography restrictions because the photography rule does not limit all unauthorized photography. This is consistent with the different purposes subsections (a) and (b) serve: whereas subsection (a) outlines rules and how they may be broken,

subsection (b) does not independently proscribe conduct. See 38 C.F.R. § 1.218(b) (outlining "fine[s] as stated in the schedule set forth herein" for those found guilty of "[c]onduct in violation of the rules and regulations set forth in paragraph (a)"). The Court turns to the "substantive provision" regarding photography, § 1.218(a)(10). See Agront, 773 F.3d at 196.

It is undisputed that subsection (a)(10) restricts photography for commercial and advertising purposes. The restriction of those species of photography features proscriptive language: "Photographs for advertising or commercial purposes may be taken only with the written consent of the head of the facility or designee." 38 C.F.R. § 1.218(a)(10) (emphasis added). In contrast, the rule regarding news photography does not contain the word "only" qualifying where news photography may be taken: "Photographs for news purposes may be taken at entrances, lobbies, foyers, or in other places designated by the head of the facility or designee." Id. No proscriptive language is included the news photography clause; instead, Appellant suggests, the prohibition on news photography in undesignated areas is implied in the news rule despite the absence of proscriptive or commanding language. (See Reply Br. at 3 ("Why a regulation would enumerate permitted areas for activity without concomitantly defining prohibited areas, defendant doesn't say.").)

"[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." Yates v. United States, 135 S. Ct. 1074, 1088 (2015) (quoting Cleveland v. United States, 531 U.S. 12, 25 (2000)). Supreme Court precedent regarding the interpretation of penal statutes is instructive:

> It has long been settled that penal statutes are to be construed strictly, and that one is not to be subjected to a penalty unless the words of the statute plainly impose it. When choice has to be made between two readings of what Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.

United States v. Campos-Serrano, 404 U.S. 293, 297 (1971) (citations and internal quotation marks omitted); accord United States v. Gonzalez, 492 F.3d 1031, 1043 (9th Cir. 2007) (quoting Campos-Serrano, 404 U.S. at 297); see also United States v. Lanier, 520 U.S. 259, 266 (2009) ("[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope . . . ."). In Campos-Serrano, the Supreme Court examined a statute that prohibited the possession of an immigrant visa, permit, "or other document required for entry into the United States." 404 U.S. at 295. A regulation allowed provided for an "alien registration receipt card," which resident aliens were able to use "for re-entry purposes as a permissible substitute for the specialized documents." Id. at 297. The Supreme Court, declining to reach a constitutional issue, affirmed a reversal of a conviction for possession of a counterfeit alien registration receipt card "upon a discrete statutory ground." Id. at 295. The Court reasoned that possession of a counterfeit alien registration receipt card was not criminalized because the regulation permitted but did not require its use: "Alien registration receipt cards may be used for re-entry by certain persons into the United States. They are not required for entry." Id. at 298.

Like in Campos-Serrano, here the Court is presented with permissive language in a regulation and asked to reinstate a charge based on that permissive language.  Given the strict construction the Court must adopt when interpreting an ambiguous penal regulation, the regulatory context of recognized charges under the VA rules and regulations, and other federal agencies' regulation of news photography on federal properties, the Court concludes that 38 C.F.R. § 1.218(a)(10) does not impose a penalty on photography for news purposes taken outside designated areas.

Appellant criticizes Appellee for reading ambiguity from the presence of the word "only" in the advertising and commercial photography clause and the absence of the word in the news photography clause. (Reply Br. at 2.)  But this lack of proscriptive language is key in examining penal rules.  See Campos-Serrano, 404 U.S. at 297.  The word "only" in the first sentence of subsection (a)(10) is central to construing the second sentence as proscriptive.  If the word "only" were omitted, then the regulation would foreclose a reading that the section could be violated by taking photographs for any purposes.  Appellant asks this Court to adopt a reading that would imply a criminal sanction in conduct the news photography clause does not expressly authorize.  That reading is unsupported by canons of construction of penal statutes and the rule of lenity.  See, e.g., Yates, 135 S. Ct. at 1088.  Even if the omission of the word "only" in the news photography clause were error, "this Court can give no remedy."  Fisher Flouring Mills Co. v. United States, 270 F.2d 27, 32 (9th Cir. 1958).  "What the Government asks is not a construction of a [regulation], but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope.  To supply omissions transcends the judicial function."  Iselin v. United States, 270 U.S. 245, 251 (1926) (rejecting government's reading of a federal tax statute).

The Court considers the VA's purpose in promulgating this regulation.  See Campos-Serrano, 404 U.S. at 298 ("If an absolutely literal reading of a statutory provision is irreconcilably at war with the clear congressional purpose, a less literal construction must be considered.").  The text in the Federal Register regarding the implementation of and amendments to 38 C.F.R. § 1.218 does not elucidate the purpose and intent of the photography rules.  See 90 Fed. Reg. 49,157 (Aug. 17, 2015); 57 Fed. Reg. 31,006 (July 13, 1992); 54 Fed. Reg. 34,977 (Aug. 23, 1989); 50 Fed. Reg. 29,226 (July 18, 1985); 38 Fed. Reg. 24,364 (Sept. 7, 1973).  On the plain language of the regulation, the news photography clause does not have a clear purpose and intent to restrict photography for news purposes.  Just as the clause may be read as proscribing news photography in undesignated places, it also may be read as an affirmative authorization of photography in designated places.  The Court finds the latter reading more persuasive.

Reading the news photography clause as an affirmative authorization, the clause maintains a meaning that is neither superfluous nor absurd.  See Tamayo-Tamayo v. Holder, 725 F.3d 950, 953 (9th Cir. 2013) (interpreting Sum v. Holder, 602 F.3d 1092, 1097 (9th Cir. 2010), as avoiding a reading that "would render part of the statute superfluous and also would lead to absurd results").  The clause affirmatively authorizes certain conduct relating to news photography which otherwise may be prohibited by the rules.  For example, a journalist taking photographs at an entrance to VA property may not be cited for unreasonable obstruction of an entrance in

violation of 38 C.F.R. § 1.218(a)(5) because the journalist's conduct is reasonable—it is expressly authorized by § 1.218(a)(10). Compare 38 C.F.R. § 1.218(a)(5) ("Conduct . . . which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, officers, elevators, stairways, or parking lots . . . is prohibited."), with id. § 1.218(a)(10) ("Photographs for news purposes may be taken at entrances, lobbies, [or] foyers . . . ."). This reading of the news photography sentence is more than just "syntactically possible"; it presents an ambiguity in the clause that requires lenity. United States v. Rollness, 561 F.3d 996, 998 (9th Cir. 2009).

Moreover, the news photography clause is not the only VA rule that affirmatively authorizes conduct. For example, subsection (a)(7) authorizes VA employees to keep and use alcoholic beverages in their quarters. 38 C.F.R. § 1.218(a)(7). The rules also affirmatively permit service animals to enter VA property when accompanied by disabled individuals. Id. § 1.218(a)(11)(i). In both of these instances, the affirmative authorization of conduct is qualified by a prohibition of conduct not expressly authorized. See id. § 1.218(a)(7) (expressly prohibiting use and introduction of alcohol on VA premises except as permitted in employee quarters); id. § 1.218(a)(11)(ii)–(iv) (restricting service animals from entering certain areas of VA property); id. § 1.218(a)(11)(ix) (restricting "animals other than service animals" from VA property). It hardly can be said that the regulatory clauses in these sections permitting conduct are violable. For example, an employee who brings alcohol authorized in employee quarters outside those quarters violates the general prohibition on alcohol on VA property, not the authorization giving employees permission to keep alcohol.

The context of the VA rules and regulations informs the intended function of 38 C.F.R. § 1.218(a)(10). See Rollness, 561 F.3d at 998. Other parts of the VA rules and regulations clearly express prohibited conduct in certain terms. As outlined in Part III.C, supra, courts have recognized charges of violations of § 1.218 where the regulation uses proscriptive or commanding language. For example, persons on VA property "shall drive in a careful and safe manner at all times," and "the willful destruction, damage, or removal of Government property or any part thereof, without authorization, is prohibited." 38 C.F.R. § 1.218(a)(3), (12). Some subsections describe with particularity what "shall constitute an offense under this paragraph," e.g., id. § 1.218(a)(2), including the subsection proscribing "unauthorized demonstrations," which lists no fewer than five categories of conduct that are not permitted, id. § 1.218(a)(14)(ii). No such mandatory language attaches to the news photography clause, which features permissive language designating places where photography "may be taken." Id. § 1.218(a)(10). The drafters of the VA rules possessed the diction of proscription and mandate in their lexicon, yet they declined to use commanding or forbidding language with respect to news photography conduct.

Other federal regulations of news photography do not elucidate the intent and purpose of subsection (a)(10). As discussed in Part III.D, supra, parallel federal regulations of photography on government property do not consistently regulate news photography, so it is difficult to extrapolate what scheme the drafters of the VA regulation intended by designating areas for news photography. Several regulations that list designated areas for news photography separately prohibit news photography outside those areas. See 7 C.F.R. § 501.9; 39 C.F.R. § 232.1(i); 41

C.F.R. § 102-74.420. This separate prohibition suggests that designating areas for news photography is not sufficient to prohibit news photography in undesignated areas. Such a reading would be consistent with other regulations' less stringent restrictions for news photography than for commercial or advertising photography. See 7 C.F.R. § 500.9; 7 C.F.R. § 502.10; 31 C.F.R. § 407.10; 43 C.F.R. § 5.4; 45 C.F.R. § 3.42(c); but see 4 C.F.R. § 25.11 (restricting unauthorized photography without parsing photographic purpose); 7 C.F.R. § 503.10 (restricting news photography in the same manner as commercial and advertising photography); 31 C.F.R. § 700.9 (same); 46 C.F.R. § 386.17 (same). Considering the drafters of the VA regulation chose to treat photography for news purposes separate from and less strictly than photography for commercial or advertising purposes, the Court cannot conclude from the context of the regulation or sister federal regulations that the sentence qualifying news conduct in 38 C.F.R. § 1.218(a)(10) gives rise to a criminal sanction for news photography in undesignated areas.

Appellant argues that reading the news photography clause as an affirmative authorization of photography in designated places would render the regulation agnostic as to news photography in undesignated places. (Reply Br. at 3.) But Appellant's argument does not support its own reading—that the regulation forbids news photography in undesignated places. Appellant admits that the regulation is agnostic as to photography for purposes other than news, commerce, and advertising. (See Pretrial Hrg. Tr. at 46:24–25.) Similarly, it is agnostic as to photographs for advertising or commercial purposes that are taken with the written consent of a VA official. See 38 C.F.R. § 1.218(a)(10). Given that Appellant's sought interpretation would read a crime into the regulation's silence as to news photography in undesignated places, Appellant's reading would imply that all photography not expressly authorized is unauthorized. This is inconsistent with Appellant's admission that the regulation does not prohibit photography for personal purposes, (see Pretrial Hrg. Tr. at 46:24–25), as well as established canons of construction, see Campos-Serrano, 404 U.S. at 297. The regulation need not address every scenario in which a photograph is authorized. But to the extent the regulation seeks to describe criminal conduct, it must set forth the conduct forbidden by subsection (a)(10). See Yates, 135 S. Ct. at 1088.

The Court is loath to imply a criminal sanction into the ambiguous negative space surrounding the news photography clause. See Lanier, 520 U.S. at 266. The Court concludes that 38 C.F.R. § 1.218 does not impose a criminal penalty for taking photographs in undesignated areas for news purposes on VA property. Consequently, the charges against Appellee under the photography subsection, 38 C.F.R. § 1.218(a)(10), were improper. For this reason, the Court affirms the Magistrate Judge's dismissal of the charges. The Court declines to reach the First Amendment issues the parties raise on this appeal.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby AFFIRMS the Magistrate Judge's dismissal of the charges against Appellee of violations of 38 C.F.R. § 1.218(a)(10).

**IT IS SO ORDERED.**